O'Harro v. Akey.

No. 20,081.

E. J. O'HARRO, *Appellee,* v. E. J. AKEY, *Appellant.*

SYLLABUS BY THE COURT.

PLEADINGS—*Petition—Reply—Proof—Immaterial Variance—Instructions —Evidence.* The proceedings examined, and held that objections to the sufficiency of the petition are not tenable; that a slight discrepancy between the allegations of the reply and the proof was not material; that the cause was properly submitted to the jury under appropriate instructions; and that the special findings and general verdict were sustained by sufficient evidence.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion filed July 8, 1916. Affirmed.

*Eugene S. Quinton, A. B. Quinton,* and *S. L. Lashbrook,* all of Topeka, for the appellant.

*Bennett R. Wheeler, John F. Switzer,* and *John L. Hunt,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for breach of a contract to convey land. The plaintiff recovered and the defendant appeals.

The petition set forth the contract, stated that the defendant had repudiated it, and claimed damages. The contract reads as follows:

"This Agreement Entered into By and between E J Ohare, Known as First Party in this Contract, and E J Akey, as Second Party, First Party agrees to trade her Residence of 10 Rooms Located in Manhattan

Riley Co Kan.   Consideration $10,000, Subject to a Mortgage of $2000, This Property is too Have Perfect Tittle and to be Clear of all Incumbrace, Excepting the Mortgage of $2,000 and to give Posesion of same on approval of Tittle and Exceptance of the Following Described Farm. of Said Second Party.

"S. E. ¼ of Sec 4, Town 33 Range 20 Labett Co. Kans.   Consideration $12,000, Clear and perfect Tittle Excepting a First Mortgage of $4,000, Drawing 5, ½% Intrest, Due in January 1920, Said Second Party Trades for this Propert Subject to Lease Now on the Farm and Held by, George W Brown, Lease is Good for the Year of 1914 and Expires March 1st 1915.

"The Party of the Second Part agrees to Give Party of the First Part untill the 15th day of April, 1914 to Inspect the Farm, and Approve of same, or this Contract to be Null and Void, Both Parties hereby Give their Notes for $200, apiece as a guarantee of good Faith on their Part, and the Notes to be Held. in Excrow by Bradley untill final Settlement, in case of failure of either Party to fullfill this Contract, after the Inspection by Party of the First Part, and Accepted, by First Party then in this case the Note would be come the property of G. W. Bradley as Payment for Commission, on the Failure of either party to fullfill this Contract, and the other parties Note Retirned."

The answer admitted execution of the contract and contained a general denial.   One affirmative defense was pleaded, which was that the plaintiff was not able to perform because she had incumbered her property with a mortgage of $2500 bearing eight per cent interest instead of a mortgage for $2000 as the contract provided, and that the defendant would not accept the property on those terms although the plaintiff asked him to do so.   The reply was that subsequent to the execution of the written contract the defendant, for his own benefit, requested the plaintiff to borrow as much money as she could on her property and pay him the proceeds above $2000.   The plaintiff undertook to do this.   She was able to borrow but $2500, which she did at the lowest rate of interest obtainable, and deposited $500 of the amount in a bank at Manhattan to be delivered to the defendant when he performed on his side.

The plaintiff and the defendant listed their properties with the same agent, who had an office in Topeka.   About April 1, 1914, the defendant and the agent went to Manhattan and the plaintiff and the defendant there agreed to exchange properties and agreed on all the terms of the exchange.   The defendant and the agent returned to Topeka.   The written contract embodying the terms agreed on was prepared in the agent's office,

O'Harro v. Akey.

was signed there by the defendant, and was sent to the plaintiff who signed it at Manhattan. In order to make the exchange it was necessary for the plaintiff to adjust some liens covering the property she was trading and other property. To do this she was obliged to mortgage the property she was trading for $2000. This situation was explained to the defendant and the contemplated mortgage was specified in the contract. After all the terms of the contract had been agreed on, but before the defendant returned to Topeka, he requested the plaintiff, when she obtained her loan, to get as much more money as she could, $3000 if possible, and turn the excess over to him. The plaintiff said it was nothing to her and she would do so if she could. Within the time specified in the contract the plaintiff, together with the agent, went to Labette county, the plaintiff inspected the defendant's land, approved it, and told the agent to notify the defendant of her approval. On May 23 the plaintiff procured the mortgage on her property. She was able to secure $2500 and no more. She was obliged to pay eight per cent interest, the lowest rate obtainable, and to pay a cash commission. She deposited $500 of the amount obtained in a bank at Manhattan to be paid to the defendant when the contract was performed. A notation was made on the books of the bank to prevent withdrawal of the money by the plaintiff. It may be that the agent's recollection of what occurred when the plaintiff unequivocally approved the defendant's land was confused. He testified that "right at the time she approved the property at the price named in the contract," and he testified quite decidedly that she did not. Whatever his motive, he opened correspondence with the defendant, telling him there was a difference between him and the plaintiff and that the plaintiff approved the trade "on the basis of $2500." The plaintiff testified she did not deviate from her original acceptance. On June 24 the plaintiff prepared and mailed to the agent a statement as a basis of settlement. Nothing came of the correspondence, and on the third or fourth of August the defendant went to Manhattan where all the details for consummating the contract were arranged by the parties themselves. Within the time performance of the contract was delayed interest accrued on the mortgage on the defendant's land.

33—98 KAN.

He had given some commission notes in connection with that mortgage which he had not paid and which he was obliged to pay in order that the incumbrance might be as stated in the contract. Rent had accrued on both properties, and there were some other details. The plaintiff narrated in full the facts relating to the procuring of the mortgage for $2500, including the rate of interest and the deposit in the bank. The defendant said it was all right and suited him. He went with the plaintiff to the bank, inquired about the deposit, and was told by the president of the bank that the deposit of $500 was there at his command on completion of the contract. It was agreed that deeds were to be delivered to the bank for exchange and the bank permitted the defendant to take with him the abstract of the plaintiff's property showing the $2500 mortgage. The defendant himself admitted on the witness stand that his understanding with the plaintiff was that the deal would be all right subject to the $2500 mortgage with an adjustment of the rate of interest, which the plaintiff said she would attend to. Her testimony was to the effect that he was entirely satisfied. The defendant returned to Topeka, and on August 7 returned the plaintiff's abstract with a letter saying he had sent his deed to his wife for signature. On the next day the plaintiff deposited her deed in the bank. On August 15 the defendant wrote the plaintiff, stating that his wife was not willing to sign the deed because she objected to the increased amount of the mortgage and to the rate of interest. He inquired if the plaintiff could not adjust the difference in the item of interest—a peculiar request if, as he testified, the plaintiff had already agreed to make the adjustment. On August 17 the plaintiff wrote the defendant that since the deal was all made she did not feel she could do differently, that she was leaving for Colorado, to be gone ten days, and that the deal would be consummated then or she would consider it all off. The plaintiff did not hear from the defendant again.

The defendant testified he had no conversation whatever with the plaintiff when at Manhattan in April about her borrowing as much above $2000 as possible and turning the cash over to him. When at Manhattan in August he did not inquire about the deposit and was not told it was in the bank subject to his disposal when the contract was consummated. He read

O'Harro v. Akey.

the abstract on the train from Manhattan to Topeka, and saw that the mortgage was for $2500. After the deed was returned by his wife without her signature he tendered it to the agent, who refused to accept it for the plaintiff. The agent (who, it will be recalled, was the defendant's agent too), denied this tender, which was not mentioned in the answer.

The defendant submitted certain special questions which were answered by the jury as follows:

"Question 1: Was the plaintiff ever ready, able and willing to comply with the contract in suit? Yes.

"If the question is answered 'yes' state the time. Answer 1: On or after May 23, 1914.

"Question 2: Did the defendant execute and tender the deed to the Labette Co. farm to Bradley? Answer 2: No.

"Question 3: Did the defendant ever refuse to comply with the agreement sued upon? Answer 3: We do not find that defendant refused verbally or in writing but absolutely failed to comply to agreement sued upon.

"Question 4: Did the plaintiff ever notify the defendant that she approved, unconditionally, the farm and deal? Answer: Yes, through Bradley, their agent.

"Question 5: Did the plaintiff ever notify the defendant that her deed was deposited in Manhattan Bank? If you answer the question yes, state how and when she gave such notice. Answer 5: No, but the evidence shows she deposited it there according to agreement.

"Question 6: If the plaintiff ever deposited her deed in the Bank, state when she did so. Answer 6: Aug. 8th, 1914."

The defendant says the reply was eliminated from the case by the plaintiff's own testimony. Recurring to the reply, it will be observed that it stated the defendant's request relating to obtaining as much money above $2000 as possible was made after the contract was executed. The plaintiff testified the request was made after the agreement had been made but before it was reduced to writing and signed. Discrepancies of this kind between pleading and proof are not strange occurrences and are not ground for summarily tossing pleadings out of a case. The statute makes them quite immaterial unless the adverse party be misled to his prejudice. In that event he must make a showing, and the pleading may then be amended. (Civ. Code, § 134.) At the time of the trial the defendant did not regard the variance of sufficient consequence to pursue the course indicated by the statute.

It is said the petition did not state a cause of action because there was no allegation that the plaintiff was able, ready and willing to carry out the contract or that she offered to do so. It did not occur to the defendant to make this objection to the petition in the district court and it is a little late to make it here. Instead of demurring to the petition on the ground stated the defendant chose to make an issue of fact of that very matter and staked his defense on the one proposition that the plaintiff was unable to perform on her part because of the $2500 mortgage bearing eight per cent, to which he would not submit.

Another defect in the petition which the defendant regards as fatal is pointed out. It was not discovered while the case was before the district court. Because no ruling on the subject was demanded or made, no error was committed and there is nothing to review.

It is said the plaintiff never did accept and approve the contract sued on. She signed the contract. The only acceptance and approval which it required was of the defendant's farm by April 15. The plaintiff's testimony relating to that subject has been stated. The jury had before it the correspondence and conduct of the parties, the parties themselves, and all their testimony, and chose whom they would believe. They believed the plaintiff, and there is enough in the record to indicate that they did not act arbitrarily.

It is said the plaintiff attached new conditions to the contract. The agent's correspondence with the defendant, the plaintiff's statement of account as a basis of settlement, and other features of the evidence are referred to. That the $2500 mortgage was not in itself a new condition is not an open question. The plaintiff said it originated in the defendant's own request which she fulfilled to the best of her ability. The request, if made as the plaintiff testified, did not constitute a modification of the written contract. The contract remained just the same, but a method of compliance which would be beneficial to the defendant was suggested. If, as the plaintiff testified, she acted on the suggestion and did the best she could to accommodate the defendant, he is estopped to complain. The defendant contradicted the plaintiff, contradicted the president of the bank, and otherwise repudiated the plaintiff's ex-

O'Harro v. Akey.

planation of the transaction. The jury performed the usual function of a jury under such circumstances and reposed confidence where it considered confidence should be reposed. The statement which the plaintiff submitted to the agent expressed on its face the plaintiff's idea of its purpose—a basis of settlement. The contract had not fixed a time for performance. Because of facts already indicated a settlement in connection with performance was a business necessity, and in view of all the circumstances the jury had the right to conclude the plaintiff was trying to close an old deal and not to make a new one. For the purpose of the decision let it be conceded that after the plaintiff had inspected the defendant's farm and had accepted and approved it the agent, acting for the plaintiff, made a new proposition to the defendant, that the trade must be closed on the basis of a $2500 mortgage on the plaintiff's property. The agent was unable to obtain the defendant's consent. When the two principals met at Manhattan in August there was no difference between them and the details of closing the trade were arranged according to the contract.

It is said the defendant's assent to whatever he assented to when at Manhattan in August was assent to a new proposition not made the basis of the action. The things discussed at Manhattan in August were the $2500 mortgage matter and the details incident to performance. Agreements respecting details of performance do not constitute modifications of the original agreement, and in this instance the details discussed were all matters of fulfillment and not of substitution. The mortgage for $2500 originated in the defendant's request or it did not. The evidence was conflicting and the verdict of the jury concluded the matter.

The defendant's wife had never been a resident of Kansas. Her attitude toward the trade was immaterial. The plaintiff had the right to fix a reasonable time within which long-delayed performance should take place or the defendant would be in default. The jury were so instructed and the verdict disposed of that subject.

Various instructions to the jury are criticized. The criticisms result very largely from the defendant's view of the pleadings, which this court does not accept, and from the defendant's view of the evidence, which the jury did not accept. The in-

structions fairly and adequately covered the law of the case but it is not necessary to discuss them in detail. There were just two substantial and meritorious questions raised by the pleadings: Did the plaintiff accept the defendant's farm and did she disable herself to perform by the mortgage for $2500 at eight per cent interest, to which the defendant would not accede? If the plaintiff was right about these matters the defendant was in default and the plaintiff was entitled to recover. The tender of deed which the defendant said he made, and which the jury found specifically he did not make, should have been made to the Manhattan bank to be effective. The two questions referred to were questions of fact the determination of which did not depend on the instructions defining the legal rights of the parties under various aspects of the evidence. The instructions on how to deal with the evidence were complete and correct. Finding No. 4 disposes of the first question. The solution of the other depended on which one of two lines of evidence would be accepted. The findings show the plaintiff was believed in all matters inquired about concerning which she testified, and the first finding could not have been made unless her testimony regarding the $2500 mortgage was believed.

Some matters discussed in the briefs which have not been referred to are deemed to be sufficiently covered by what has been said.

The judgment of the district court is affirmed.